Eastern District of Kentucky
**FILED**

JUN 2 1 2018

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

UNITED STATES OF AMERICA, *ex rel.* JESSICA N. STIPE,

    Plaintiff,

v.

POWELL COUNTY FISCAL COURT,

    Defendant.

NO. 5:16-CV-446-KKC

**OPINION AND ORDER**

KKC

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Relator-Plaintiff Jessica Stipe's Motion to Join Party (DE 25) and Defendant Powell County Fiscal Court's Motion to Dismiss (DE 26) and Motion for Leave to File a Third Party Complaint (DE 29). For the reasons set forth below, the Court denies Stipe's motion to join, grants Defendant's motion to dismiss, and denies Defendant's motion to file a third party complaint as moot.

### I. Background

This *qui tam* action was first initiated by Relator Robert Justin Wickline on December 5, 2016. (Compl., DE 1.) In January 2017, Wickline filed his First Amended Complaint, which added Jessica Stipe as a Relator. (1st Am. Compl., DE 3.) In May 2017, the United States provided notice that it declined to intervene and, shortly thereafter, the Relators' First Amended Complaint was unsealed. On August 11, 2017, the Relators moved to file a Second Amended Complaint removing Wickline as a Relator, which the Court granted. (DE 10, 11.) The following factual background is drawn from Stipe's Second Amended Complaint. (2d Am. Compl., DE 12.)

1

Stipe is a resident of Mount Sterling, Kentucky and was employed by Powell County Fiscal Court ("PCFC") as an emergency medical technician ("EMT"). PCFC is licensed to provide ambulance services to the citizens of Powell County, Kentucky. (2d Am. Compl. ¶ 2.) It is also a participating ambulance service provider in Medicare, which pays for federal reimbursement for medically necessary ambulance transportation. (2d Am. Compl. ¶¶ 9–12.)

Stipe alleges that PCFC regularly transported patients by ambulance when such transportation was not medically necessary. As an example, she discusses patient V.H., who, over a two year period, received ambulance transportation to and from dialysis despite being capable of walking and not requiring oxygen therapy. (2d Am. Compl. ¶ 22.) She also asserts that, on at least thirty occasions, PCFC employees documented non-emergency dialysis transport as "ALS, Level 1," a significantly higher billing rate than non-emergency services. She claims that ten patients had been transported for non-emergency reasons and documented as "bed confined," despite not meeting Medicare's definition of the term, and that eight patients were routinely transported despite not meeting the medical necessity requirement. (2d Am. Compl. ¶¶ 23–24.) She also asserts that, after Menifee County posted a memorandum that certain patients residing at the Edgewood Nursing Home did not meet the medical necessity standard for transport, PCFC sent ambulances into Menifee County to provide services to those thirty-nine residents. (2d Am. Compl. ¶ 25.) In furtherance of this scheme, she claims that PCFC employees Director Nathan Hall and Assistant Director Arlen Rogers pressured subordinate employees, including herself, to falsify and change medical documentation and to use a pre-filled "Medical Necessity for Ambulance Transport" form so that PCFC could bill for non-emergency transportation. (2d Am. Compl. ¶¶ 27–31.)

Stipe's second allegation is that PCFC billed Medicare for non-reimbursable ambulance transportation by employing an EMT whose certification had expired and a second employee, G.C., who was not eligible for EMT certification due to a felony diversion program sentence.

(2d Am. Compl. ¶ 36–44.) She claims that these employees completed sixty-two and forty-seven ambulance "runs," respectively, which were submitted fraudulently to Medicare for reimbursement. (2d Am. Compl. ¶¶ 40, 44.)

Next, Stipe alleges that PCFC billed for non-reimbursable ambulance transportation during an approximately one-year period when it did not employ a medical director for ambulance services. She claims that the Kentucky Board of Emergency Medical Services advised PCFC, pursuant to federal and state regulations, to cease advanced life support transport until a medical director was supervising operations. Despite this warning, PCFC continued to bill for those services and receive governmental reimbursements. (2d Am. Compl. ¶¶ 52–56.)

Finally, Stipe claims that she witnessed, on numerous occasions, PCFC employees provide advanced life support transport to patients when it was medically unnecessary and that sixty-five claims were fraudulently up-charged as a result. (2d Am. Compl. ¶¶ 62–64.)

Stipe asserts two claims under the False Claims Act ("FCA"). 31 U.S.C. § 3729, *et seq*. Count I of the Second Amended Complaint asserts that PCFC knowingly presented, or caused to be presented, false or fraudulent claims for ambulance transport that were not reimbursable. (2d Am. Compl. ¶¶ 65–70); *see* 31 U.S.C. § 3729(a)(1)(A) (holding liable "any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"). Count II alleges that PCFC knowingly made, used, or caused to be made or used false records or statements, specifically reports, physician certification statements, and other requests for reimbursements, material to false or fraudulent claims. (2d Am. Compl. ¶¶ 71–76); *see* 31 U.S.C. § 3729(a)(1)(A) (holding liable "any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim").

## II. Analysis

There are three motions pending before the Court. First, Stipe has moved join Steven K. Hardy, a former employee of PCFC, as a relator pursuant to Fed. R. Civ. P. 20. (DE 25.) PCFC has moved to dismiss this action for failure to state a claim under Fed. R. Civ. P. 12(b)(1). (DE 26.) Lastly, PCFC has moved to file a third-party complaint to join Medical Claims Assistance, Inc. and Medical Transport Systems Consulting, LLC as third-party defendants, pursuant to Fed. R. Civ. P. 14(a). (DE 29). The time for responses and replies have run and these matters are now ripe for consideration.

### A. Stipe's motion to join Hardy as a relator

Stipe seeks to join Steven Hardy as a relator in this action to replace Wickline, who removed himself as a relator after returning to work at PCFC. A person may be joined as a plaintiff in an action "if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)–(B). PCFC objects to Hardy's joinder because he previously sued PCFC in Kentucky state court and, following settlement, dismissed that case with prejudice. Agreed Order of Dismissal, *Hardy v. Powell Cty. Fiscal Ct.*, No. 15-CI-00075 (Powell Cir. Ct. Oct. 26, 2017). Hardy's settlement agreement with PCFC included a release of all legal claims. (DE 32) (filed under seal).

Generally, under Kentucky law, "a release is a surrender of a claimant's right to prosecute a cause of action." *Waddle v. Galen of Ky., Inc.*, 131 S.W.3d 361, 364 (Ky. Ct. App. 2004). In *qui tam* suits, this rule is complicated by the fact that the injured party is the United States. Hardy's standing to bring a suit is based not on his own injury, but on the "partial assignment of the Government's damages claim" to him. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). This assignment gave Hardy "an interest in the lawsuit"—

4

based on his right to file suit—at the time that he signed the Release. *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 329 (4th Cir. 2010) (citing 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1545 (2d ed. 1990)). Accordingly, Hardy's pre-filing release bars his *qui tam* claim if "(1) the release can be fairly interpreted to encompass *qui tam* claims and (2) public policy does not otherwise outweigh enforcement of the release." *United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 336 (D. Mass. 2011) (collecting cases).[1]

Stipe argues that Hardy's state court action involved only violations of state law, and therefore the Release "could not have included claims under the False Claims Act." (DE 44, at 7.) That argument is unavailing. The FCA jurisdictional provision states that a *qui tam* action "may be brought in any judicial district" where a defendant resides, transacts businesses, or a proscribed act occurred. 31 U.S.C. § 3732(a). When "considering the propriety of state-court jurisdiction over any particular federal claim, the [c]ourt begins with the presumption that state courts enjoy concurrent jurisdiction." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981). While FCA actions in state courts are rare, they have been recognized as within the jurisdictional scope of the FCA. *See United States ex rel. Paul v. Parsons, Brinkerhoff, Quade & Douglas, Inc.*, 860 F. Supp. 370, 375 (S.D. Tex. 1994) ("The False Claims Act states that an action arising under it 'may' be brought in federal court. Thus, pursuant to the language of the statute, there is concurrent jurisdiction between the federal and state courts.") (citations omitted), *aff'd per curiam*, 53 F.3d 1282 (5th Cir. 1995) ("[S]tate courts have concurrent jurisdiction over FCA claims."); *United States ex rel. Hartigan v. Palumbo Bros., Inc.*, 797 F. Supp. 624, 631 (N.D. Ill. 1992) (holding state courts

---

[1] It is undisputed that a post-filing release of *qui tam* claims is unenforceable. *See* 31 U.S.C. § 3730(b)(1) ("The Action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.").

have concurrent jurisdiction over FCA claims); *Driscoll v. Super. Ct.*, 167 Cal. Rptr. 3d 364, 375 (Cal. Ct. App. 2014) ("Based on the deeply rooted presumption in favor of concurrent state court jurisdiction, our analysis of the FCA under *Gulf Offshore*, and relevant case law, we conclude that state courts have concurrent jurisdiction over FCA retaliation claims."). The language of the Release was broad, specifying a release of "all claims." (DE 32.) Because, at the time of signing the Release, Hardy possessed an enforceable interest in a FCA claim which he could have pursued in either state or federal court, the terms of the Release encompass that claim.

A number of courts of appeals, following the Ninth Circuit's decision in *United States v. Northrop Corp*, 59 F.3d 953 (9th Cir. 1995), have found that balancing public policy considerations, in some circumstances, prevent the enforceability of pre-filing releases of FCA claims. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16 (2d Cir. 2016); *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161 (10th Cir. 2009); *cf. United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909 (8th Cir. 2001) (endorsing *Northrop* test, but declining to apply to release signed during a bankruptcy proceeding).[2] Courts have applied a "government knowledge test" to balance the competing public policy interests. Generally, "[w]hen the government is unaware of potential FCA claims the public interest favoring the use of *qui tam* suits to supplement federal enforcement weighs against enforcing prefiling releases. But when the government is aware of the claims . . . public policies supporting the private settlement of suits heavily favor enforcement." *Radcliffe*, 600 F.3d at 332. Courts have disagreed on what the relevant time is for testing government knowledge. The Fourth Circuit has held that the government must be aware of the

---

[2] This second prong applies the balancing test enunciated by the Supreme Court in *Town of Newton v. Rumery*, 480 U.S. 386, 392, 392 (1987) (holding that "a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by the enforcement of the agreement.")

allegations before the relator files suit, *id.* at 332–333, while the Tenth Circuit has looked to the time that the release was signed, *Ritchie*, 558 F.3d at 1170. Under either of these approaches Hardy's Release is clearly enforceable. This action was initiated by Wickline on December 5, 2016, (DE 1), and the United States gave notice that it declined to intervene on May 30, 2017, (DE 6). Therefore, the government had knowledge of the fraud allegations against PCFC both before Hardy signed the Release on September 14, 2017, (DE 32) and before he sought to join as a party in this action on December 12, 2017, (DE 25). Accordingly, Stipe's motion to join Hardy as a Relator must be denied.

### B. PCFC's motion to dismiss

A complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) if it fails to allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a 12(b)(6) motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009)).

A party alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Sixth Circuit has held that, because a *qui tam* action alleges fraud, the heightened pleading requirements of Rule 9(b) apply. *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). To comply with Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* at 877 (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)). In other words, the plaintiff must "specify the who, what, when,

where, and how of the alleged fraud." *Id.* (internal quotation marks omitted) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). In the context of an FCA claim, this "means that a plaintiff must sufficiently plead not only 'that the defendant made a false statement,' but also 'that the defendant submitted a claim for payment to the federal government' involving the false statement." *United States ex rel. Crockett v. Complete Fitness Rehabilitation, Inc.* 721 F. App'x 451, 457 (6th Cir 2018) (quoting *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016)). Merely "alleging that the defendants must have submitted fraudulent claims to the government does not satisfy a plaintiff's duty to plead with particularity under Rule 9(b)." *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Sanderson*, 447 F.3d at 878)).

Stipe's Complaint does not identify any actual false claims for payment that were submitted to the United States. Instead, Stipe describes instances were PCFC engaged in underlying fraudulent behavior and claims that false claims must have been submitted as a result. For instance, Stipe alleges that PCFC regularly transported government healthcare beneficiaries who were able to ambulate and therefore did not meet the definition of medical necessity, (2d Am. Compl. ¶ 19), and provides particularized details of that scheme, (2d Am. Compl. ¶¶ 22–25). Stipe goes on to allege that PCFC's director and assistant director conspired with her and other employees to falsify the medical documentation for these patients "so that PCFC could bill for non-emergency transports when patients did not meet medical necessity" and that she was directly told to change documentation. (2d Am. Compl. ¶¶ 27–28.) She has not, however, plead any facts related to the actual submission of bills resulting from the scheme to the United States. These facts are an example of an insufficient allegation that false claims *must* have been submitted. *See Sanderson*, 447 F.3d at 877 ("Rule

9(b) 'does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.") (quoting *United States ex rel. Clausen v. Lab. Corp. of America*, 290 F.3d 1301, 1311 (11th Cir. 2002)); *see also Crockett*, 721 F. App'x at 458 ("[A] medical professional . . . cannot establish an FCA fraud claim by simply identifying a scheme that the professional considers improper medical practice. Instead, a relator must also allege with particularity that the scheme involved submissions to the government, and where a relator does not do so, her claim is subject to dismissal.") (internal citations omitted). Stipe's other allegations fail for similar reasons. While she describes in detail an underlying fraudulent scheme by PCFC to employ improperly credentialed EMTs, fail to employ a medical director, and provide advanced life support services to patients who did not require it, she does not describe with particularity how that scheme resulted in the submission of false claims to the United States. Instead, Stipe merely makes the conclusory allegation that approximately 693 total runs must have been submitted as a result. (2d Am. Compl. ¶¶ 40, 44, 59, 64.) The Complaint is devoid of concrete facts about when, if ever, the fraudulent claims were submitted. Those claims "could have [been] submitted . . . the day after the transport, the next month, or the next years. Or perhaps . . . never submitted." *United States ex rel. Doe v. Jan-Car Ambulance Serv.*, 187 F. Supp. 3d 786, 794 (E.D. Ky. 2016). Accordingly, the claims are not plead with the particularity required by Rule 9(b).

Stipe argues that, even though her Complaint does not identify specific instances of fraudulent billing, it demonstrates that she has "personal knowledge of an invasive and long term scheme to defraud the federal government." (Stipe Resp. at 11, DE 44.) The Sixth Circuit has recognized that "the requirement that a relator identify an actual false claim may be relaxed when, even though the relator is unable to produce an actual billing or invoice, he or

she has pled facts which support a strong inference that a claim was submitted." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 769 (6th Cir. 2016) (quoting *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 471 (6th Cir. 2011)). In order for this narrow exception to apply, the relator must "allege[] specific personal knowledge that relates directly to billing practices." *Id.*

Stipes cannot rely on the *Prather* exception. In *Prather*, an inference of false claims existed because Prather had "detailed knowledge of the billing and treatment documentation related to the submission of requests for final payment" and made "specific allegations regarding requests for anticipated payments." *Id.* at 770. Prather provided specific information about the treatment of patients, the dates that they were cared for and physicians signed certifications, alleged that requests were submitted, and identified the amount requested. *Id.* at 769–70. Most significantly, Prather was hired to work on "a project devoted to working through a backlog of Medicare claims—and her responsibilities were focused on reviewing the documentation for those Medicare claims, *in anticipation of them being submitted to Medicare.*" *Id.* at 770. Stipe was employed in a care provider role as an EMT and she does not allege that her job involved any work related to billing or that it gave her detailed or specialized knowledge of PCFC's billing practices. *See Crockett*, 721 F. App'x at 458 (describing the exception as applying to "billing employees who have detailed personal knowledge of the submitting entity's billing practices."). Accordingly, Stipe lacks the specialized knowledge necessary to invoke the exception to Rule 9(b).[3]

---

[3] Because the Court finds that Stipe's Complaint is subject to dismissal for failing to meet the requirements of Rule 9(b), it does not reach the question of whether this action is barred by the public disclosure doctrine. *See* 31 U.S.C. § 3730(e)(4)(A).

### III. Conclusion

For the reasons set forth above, the Court **HEREBY ORDERS** that:

(1) Plaintiff Stipe's Motion to Join Party (DE 25) is **DENIED**;

(2) Defendant's Motion to Dismiss (DE 26) is **GRANTED**;

(3) Plaintiff's claims are **DISMISSED**;

(4) Defendant's Motion for Leave to File Third-Party Complaint (DE 29) is **DENIED** as moot;

(5) judgment consistent with this Order will be entered.

Dated June 21, 2018.



Signed By:
Karen K. Caldwell
United States District Judge